

# COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS

HAFIZA ASLAMI
    Plaintiff

V

AIG LIFE INSURANCE CO.,
AIG CLAIM SERVICES, INC.,
LORI RODEK and GERALD WYNDORF
    Defendants

SUPERIOR COURT
WOCV2005-

05-0491

**FILED**

MAR 17 2005

ATTEST:
_Frank G. Ford_
CLERK

## COMPLAINT AND JURY DEMAND

1.    Plaintiff, Hafiza Aslami, is the widow of Fraidoon Aslami, who died on or about July 26, 2002.

2.    Defendant, AIG Life Insurance Co., provided life insurance and accidental death benefits coverage by means of a group policy to Fraidoon Aslami's employer, FiberCore, Inc., a Massachusetts corporation.

3.    Defendant, AIG Claim Services, Inc., is the entity handling the claim for the policy as a result of Fraidoon Aslami's death.

4.    Defendant, Lori Rodek, is an agent, servant or employee of defendant, AIG Life Insurance Co. and/or AIG Claim Services, Inc.

5.    Defendant Gerald Wyndorf is the President of AIG Life Insurance Co.

6.    On or about March 1, 2002, defendant, AIG Life Insurance Co., issued a Blanket Accident Insurance Policy to Fiber Core, Inc., a Massachusetts corporation. A copy of the policy is attached hereto as Exhibit A.

7.    The policy, #GTP0008062491, provided accidental death and disability benefits to all active, full-time, named United States and

International employees of the policyholder, Fiber Core, Inc.

8.     At the time of his death on July 26, 2002, decedent Fraidoon Aslami was a full-time employee of Fiber Core, Inc.

9.     The policy, #GTP0008062491, provides for a benefit of five (5) times the annual salary rounded to the next highest $1,000.00 to a maximum of $500,000.00 exclusive of advances, bonuses, tips, commissions and special compensation.

10.    On or about July 26, 2002, decedent, Fraidoon Aslami, was swimming in Lake Gulvahar in Gulvahar, Afghanistan and drowned.

11.    Fraidoon Aslami was taken to Gulvahar Hospital where resuscitation efforts were undertaken. Mr. Aslami could not be resuscitated. See Exhibit B.

12.    On or about July 31, 2002, the United Stated Department of the State issued a Report of the Death of an American Citizen Abroad which stated that Mr. Aslami died of aspiration pneumonia and hypoxia due to drowning. The report is attached hereto as Exhibit C.

13.    On or about December 18, 2002, plaintiff, Hafiza Aslami, gave notice of her claim for the accidental death benefits due to her under the Fiber Core policy to the defendants. A copy of the claim form is attached hereto as Exhibit D.

14.    On or about January 3, 2003, defendant, AIG Claim Service, Inc., acknowledged receipt of the claim. A copy of the acknowledgement letter from Lori A. Rodek to Hafiza Aslami is attached hereto as Exhibit E.

15.    For over eighteen (18) months, defendants failed, refused and neglected to settle the claim.

16.    On or about July 6, 2004, defendants paid Mrs. Aslami $263,000 in settlement of the claim. See Exhibit F.

17.    On or about March 15, 2004, plaintiff sent demands pursuant to G.L. c. 93A/176D to the President of AIG Claims Services, Inc. and Lori Rodek

of AIG Claim Services, Inc. demanding the accidental death benefits due
Hafiza Aslami. Copies of the letters and the delivery confirmations are
attached hereto as Exhibit G.

18.     On or about March 19, 2004, Lori Rodek responded to counsel's
93A/176D demand letter. She did not offer a prompt, fair and reasonable
settlement of the claim. A copy of the letter is attached hereto as Exhibit H.

19.     On or about March 31, 2004, plaintiff sent a demand letter pursuant to
G.L. c. 93A/176D to AIG Life Insurance Company, demanding the
accidental death benefits due Hafiza Aslami in the amount of $250,000.00.
A copy of the letter and the certified mail return receipt are attached hereto
as Exhibit I.

20.     Defendant, AIG Life Insurance Co. failed, neglected or refused to
respond to counsel's 93A/176D letter and failed to make a fair, prompt and
reasonable offer of settlement of the claim.

21.     Defendants failed, neglected or refused to make a prompt, fair and
reasonable offer of settlement of the claim for over eighteen (19) months,
depriving plaintiff Hafiza Aslami use of the money.

22.     Defendants, AIG Life Insurance Co., AIG Claim Service, Inc., Lori
Rodek and Gerald Wyndorf breached their duty to effect a prompt, fair and
reasonable settlement of plaintiff Hafiza Aslami's claim for the accidental
death by drowning of her husband, Fraidoon Aslami.

23.     The conduct of the defendants, jointly and/or severally, is an unfair or
deceptive act or practice and violates G.L. c. 93A statutes, regulations and
cases decided thereunder for which the plaintiff seeks not less than double
nor more than treble her actual damages against these defendants jointly
and/or severally plus interest and costs.

24.     The conduct and actions of the defendant jointly and/or severally are
a violation of G.L. c. 176.

25.     The defendant AIG Life Insurance Company was unjustly enriched
and/or otherwise profited from the delay in paying the plaintiff the funds
due under the policy by retaining the funds for their own use. As a result,

the defendant AIG is liable to the plaintiff for the loss of use of the funds.

WHEREFORE, plaintiff demands judgment as follows:

a.    Against the defendants jointly and/or severally for the plaintiff's damages in the amount of $49,970.00.

b.    Against the defendants jointly and/or severally pursuant to G.L. c. 93A for not less than double no more than treble her actual damages plus attorney's fees, costs and interest.

c.    Plaintiff be awarded damages pursuant to G.L. c. 176D plus additional treble damages for the defendant's violation of G.L. c. 176D.

d.    For any other relief available to the plaintiff.

Plaintiff demands trial by jury.

> Hafiza Aslami
> by her Attorney
>
>
> Stephen Gordon, Esq.
> STEPHEN GORDON & ASSOCIATES
> 500 Main Street, Suite 535
> Worcester, MA 01608
> (508) 755-1050
> BBO #203620



**AIG LIFE INSURANCE COMPANY**
600 KING STREET
WILMINGTON, DELAWARE 19801
(302) 594-2000
(Herein called the Company)

Policyholder: Fiber Core, Inc.
Policy Number: GTP 0008062491

05-0491

### BLANKET ACCIDENT INSURANCE POLICY

This Policy is a legal contract between the Policyholder and the Company. The Company agrees to insure eligible persons of the Policyholder for whom premium is paid (herein called Insured Person(s)) against loss covered by this Policy subject to its provisions, limitations and exclusions. The persons eligible to be Insured Persons are all persons described in the Classification of Eligible Persons section of the Declarations section of this Policy.

This Policy is issued in consideration of the payment of the required premium when due and the statements set forth in the Declarations section.

This Policy begins on the Policy Effective Date shown in the Declarations section and continues in effect until the Policy Termination Date as long as premiums are paid when due, unless otherwise terminated as further provided in this Policy. If this Policy is terminated, insurance ends on the date to which premiums have been paid. After the Policy Termination Date, this Policy may be renewed for additional periods of time by mutual written consent of the Company and the Policyholder at the premium rates in effect at the time of renewal.

This Policy is governed by the laws of the state in which it is delivered.

The President and Secretary of AIG Life Insurance Company witness this Policy:

President                                                Secretary

**PLEASE READ THIS POLICY CAREFULLY.**

## THIS IS AN ACCIDENT ONLY POLICY. IT DOES NOT COVER SICKNESS OR DISEASE.

## TABLE OF CONTENTS

Declarations ........................................................................................................................DP1

Definitions...........................................................................................................................3

Policy Effective and Termination Dates ...............................................................................5

Insured's Effective and Termination Dates ...........................................................................5

Premium...............................................................................................................................5

Benefits ...............................................................................................................................6
  Principal Sum....................................................................................................................6
  Reduction Schedule..........................................................................................................6
  B-1  Accidental Death Benefit ..........................................................................................6
  B-2  Accidental Dismemberment Benefit...........................................................................7
  Exposure and Disappearance...........................................................................................7

Limitations ...........................................................................................................................8
  Limitation on Multiple Benefits..........................................................................................8
  Aggregate Limit................................................................................................................8

General Exclusions...............................................................................................................8

Claims Provisions ................................................................................................................8

General Provisions ..............................................................................................................10

## DECLARATIONS

1.   **Identification of Policyholder:**

Name of Policyholder: Fiber Core, Inc.
Address of Policyholder: 253 Worcester Road, Charlton, MA 01507
Type of Business or Purpose of Organization:
Covered Affiliates(s) or Subsidiary(ies): None
Policy Number: GTP 0008062491

**Newly Acquired Corporations, Partnerships, or Sole Proprietorships.** The premium for this Policy applies only to the Policyholder as constituted on the Policy Effective Date (or any renewal date of this Policy). However, any corporation, partnership, or sole proprietorship acquired by the Policyholder after the Policy Effective Date (or the renewal date) will be considered a part of the Policyholder, or a Covered Affiliate or Subsidiary, as of the date of the acquisition, but only if the following conditions are both met by the Policyholder within a reasonable time after the acquisition date: (1) it must report to the Company, in writing, the name of the newly acquired entity and all underwriting information the Company deems necessary to determine any additional premium required; and (2) it must agree to, and must pay, any required additional premium (or an appropriate portion thereof as agreed upon with the Company). If both conditions are not met within a reasonable time after the acquisition date, the newly acquired entity will not be considered a part of the Policyholder, or a Covered Affiliate or Subsidiary, and the employees from the newly acquired entity will not be considered as employees of the Policyholder or a Covered Affiliate or Subsidiary for Policy purposes, until the date both conditions are met.

2.   **Classification of Eligible Persons:**

Class        Description of Class

I            All Active, Full-time, Named U.S. and International Employees
             (excluding truck drivers) of the Policyholder.

3.   **Principal Sums, Hazards, Benefits and Other Riders and Endorsements for Eligible Persons:**

Any Benefit shown in any row of the chart below applies only to an eligible person in a Class shown in that row, only with respect to an accident that occurs under the circumstances described in a Hazard shown in that row as to such person. Any other Rider or Endorsement shown in any row of the chart below applies only with respect to the Classes, Hazards, and Benefits shown in that row.

Section 3A.

| Class(es) | Principal Sum |
| --- | --- |
| I | Five Times Annual Salary rounded to the next highest $1,000 if not already a multiple thereof, to a maximum of $500,000.00 |

'Annual Salary' means the Insured's base annual salary exclusive of overtime, bonuses, tips, commission, and special compensation.

Section 3B.

| Class(es) | Hazard(s) | Benefits and Benefit Riders | Other Rider(s) and Endorsement(s) |
|-----------|-----------|-----------------------------|-----------------------------------|
| I | H-20 | B-1, B-2, B-9, B-25, B-28 | |

Section 3C.

Other Riders and Endorsements to the Policy:

E-5

4.    **Aggregate Limit:** $2,500,000 per accident

5.    **Hazards, Benefits and Benefit Riders, Other Riders and Endorsements, and Attachments Made Part of this Policy:**

a.    The following Hazards are made part of the Policy as of the Policy Effective Date:

| FORM NUMBER | HAZARD NUMBER | DESCRIPTION |
|-------------|---------------|-------------|
| C11879 | H-20 | 24-Hour Accident Protection |

b.    Check one and only one:

|   | B-1 | Accidental Death Benefit Only |
|---|-----|-------------------------------|
| X | B-1 and B-2 | Both Accidental Death and Accidental Dismemberment and Paralysis Benefits |

The following Benefits and Benefit Riders/Endorsements are attached to and made part of the Policy as of the Policy Effective Date. Each Benefit Rider/Endorsement is subject to all provisions, limitations and exclusions of the Policy that are not specifically modified by that Benefit Rider/Endorsement:

| FORM NUMBER | BENEFIT NUMBER | DESCRIPTION |
|-------------|----------------|-------------|
| C11916 | B-9 | Conversion Privilege |
| C11932 | B-25 | Rehabilitation Benefit |
| C11935 | B-28 | Seat Belt and Air Bag Benefit (Percentage of Principal Sum Amount) |

c.    The following attachments are made part of the Policy as of the Policy Effective Date:

C30081MA    E-5        Injury Definition And General Exclusions Amendatory
                       Endorsement

6.    **Premiums:**

It is hereby agreed and understood that the premium amounts, and the manner in which premiums are due and payable, are as follows:

$3,224.00 per year, due and payable in annual installments with the first installment due as of the Policy Effective Date and subsequent installments due as of each anniversary date.

7.    **Coverage Effective Date:**

Subject to the Policy provisions regarding the effective date of coverage for individuals, insurance will become effective as to each eligible person in consideration of the required premium payment on the following date: The policy Effective Date or the first day of active employment with the Policyholder, whichever occurs later.

A change in coverage due to a change in the eligible person's Annual Salary will become effective on the latest of the following dates: (1) if the change requires a change in premium, the date the first changed premium is paid when due; or (2) the effective date of the change. However, a changed Principal Sum applies only with respect to accidents that occur on or after the effective date of the change.

8.    **Policy Term:**

Policy Effective Date: March 1, 2002
Policy Anniversary Date: March 1, 2003
Policy Termination Date: March 1, 2005

## DEFINITIONS

**Airworthiness Certificate** - means the "Standard" Airworthiness Certificate issued by the Federal Aviation Agency of the United States of America or its equivalent issued by the governmental authority having jurisdiction over civil aviation in the country of registry.

**Civilian Aircraft** - means a civil or public aircraft having a current and valid Airworthiness Certificate and piloted by a person who has a current and valid medical certificate and pilot certificate with appropriate ratings for the aircraft. A Civilian Aircraft does not include a Policyholder Aircraft.

**Immediate Family Member** - means a person who is related to the Insured Person in any of the following ways: spouse, brother-in-law, sister-in-law, son-in-law, daughter-in-law, mother-in-law, father-in-law, parent (includes stepparent), brother or sister (includes stepbrother or stepsister), or child (includes legally adopted or stepchild).

**Injury** - means bodily injury caused by an accident that: (1) occurs while this Policy is in force as to the person whose injury is the basis of claim; (2) occurs under the circumstances described in a Hazard applicable to that person; and (3) results directly and independently of all other causes in a loss covered under a Benefit applicable to such Hazard. See the Principal Sums, Hazards and Benefits for Eligible Persons section in the Declarations section of this Policy for applicability of Hazards and Benefits.

**Insured** - means a person: (1) who is a member of an eligible class of persons as described in the Classification of Eligible Persons section of the Declarations section of this Policy; (2) for whom premium has been paid; and (3) while covered under this Policy.

**Insured Person** - means an Insured.

**Military Air Transport Aircraft** - means an aircraft having a current and valid Airworthiness Certificate; piloted by a person who has a current and valid medical certificate and pilot certificate with appropriate ratings for the aircraft; and operated by the United States of America, or by the similar air transport service of any duly constituted governmental authority of any other recognized country.

**Passenger** - means a person not performing as a pilot, operator or crew member of a conveyance.

**Physician** - means a licensed practitioner of the healing arts acting within the scope of his or her license who is not: 1) the Insured Person; 2) an Immediate Family Member; or 3) retained by the Policyholder.

**Policyholder Aircraft** - means any aircraft with a current and valid Airworthiness Certificate and owned, leased or operated by the Policyholder.

**Specialized Aviation Activity** - means an aircraft while it is being used for one or  more of the following activities:

- acrobatic or stunt flying
- racing
- any endurance tests
- any flight on a rocket-propelled or rocket-launched aircraft
- crop dusting
- crop seeding
- crop spraying
- fire fighting
- exploration
- pipe line inspection
- power line inspection
- any form of hunting
- bird or fowl herding
- aerial photography
- banner towing
- any test or experimental purpose
- any flight which requires a special permit or waiver from the authority having jurisdiction over civil aviation, even though granted.

# POLICY EFFECTIVE AND TERMINATION DATES

**Effective Date.** This Policy begins on the Policy Effective Date shown in the Declarations section of this Policy at 12:01 AM Standard Time at the address of the Policyholder where this Policy is delivered.

**Termination Date.** Either the Company or the Policyholder may terminate this Policy on any Policy Anniversary Date by giving 30 days advance written notice to the other party. This Policy may also, at any time, be terminated by mutual written consent of the Company and the Policyholder. This Policy terminates automatically on the earlier of: 1) the Policy Termination Date shown in the Declarations section of this Policy; or 2) the premium due date if premiums are not paid when due. Termination takes effect at 12:01 AM Standard Time at the Policyholder's address on the date of termination.

## INSURED'S EFFECTIVE AND TERMINATION DATES

**Effective Date.** An Insured's coverage under this Policy begins on the latest of: (1) the Policy Effective Date; (2) the date the person becomes a member of an eligible class of persons as described in the Classification of Eligible Persons section of the Declarations section of this Policy; or (3) the Coverage Effective Date described in the Declarations section of this Policy.

**Termination Date.** An Insured's coverage under this Policy ends on the earliest of: (1) the date this Policy is terminated; (2) the premium due date if premiums are not paid when due; or (3) the date the Insured ceases to be a member of any eligible class(es) of persons as described in the Classification of Eligible Persons section of the Declarations section of this Policy.

Termination of coverage will not affect a claim for a covered loss that occurred while the Insured's coverage was in force under this Policy.

## PREMIUM

**Premiums.** Premiums are payable to the Company at the rates and in the manner described in the Premiums section of the Declarations section of this Policy. The Company may change the required premiums due on any premium due date on or after the first Policy anniversary date, as measured annually from the Policy Effective Date by giving the Policyholder at least 31 days advance written notice. The Company may change the required premiums as a condition of any renewal of this Policy. The Company may also change the required premiums at any time when any coverage change affecting premiums is made in this Policy.

**Grace Period.** A Grace Period of 31 days will be provided for the payment of any premium due after the first. This Policy will not be terminated for nonpayment of premium during the Grace Period if the Policyholder pays all premiums due by the last day of the Grace Period. This Policy will terminate on the last day of the period for which all premiums have been paid if the Policyholder fails to pay all premiums due by the last day of the Grace Period.

If the Company expressly agrees to accept late payment of a premium without terminating this Policy, the Company does so in accordance with the Noncompliance with Policy Requirements provision of the General Provisions section. In such case, the Policyholder will be liable to the Company for any unpaid premiums for the time this Policy is in force, plus all costs and expenses (including, but not limited to, reasonable attorney fees, collection fees and court costs) incurred by the Company in the collection of all overdue amounts.

No grace period will be provided if the Company receives notice to terminate this Policy prior to a premium due date.

## BENEFITS

**Principal Sum.** As applicable to each Hazard and Benefit for each Insured Person, Principal Sum means the amount of insurance in force under this Policy on that person for that Hazard and Benefit as described for'the Insured Person's eligible class in the Principal Sums, Hazards and Benefits section of the Declarations section of this Policy.

**Reduction Schedule.** The amount payable for a loss will be reduced if an Insured Person is age 70 or older on the date of the accident causing the loss with respect to any Benefit provided by this Policy where the amount payable for the loss is determined as a percentage of his or her Principal Sum. The amount payable for the Insured Person's loss under that Benefit is a percentage of the amount that would otherwise be payable, according to the following schedule:

| AGE ON DATE OF ACCIDENT | PERCENTAGE OF AMOUNT OTHERWISE PAYABLE |
|---|---|
| 70 - 74 | 65% |
| 75 - 79 | 45% |
| 80 - 84 | 30% |
| 85 and older | 15% |

Premium for an Insured Person age 70 or older is based on 100% of the coverage that would be in effect if the Insured Person were under age 70.

"Age" as used above refers to the age of the Insured Person on the Insured Person's most recent birthday, regardless of the actual time of birth.

**B-1.    Accidental Death Benefit.** See the Principal Sums, Hazards and Benefits for Eligible Persons section of the Declarations section of the Policy for the applicability of this Benefit with respect to each class of Insured Persons and each hazard. If Injury to the Insured Person results in death within 365 days of the date of the accident that caused the Injury, the Company will pay 100% of the Principal Sum.

**B-2.   Accidental Dismemberment and Paralysis Benefit.** See the Principal Sums, Hazards and Benefits for Eligible Persons section of the Declarations section of the Policy for the applicability of this Benefit with respect to each class of Insured Persons and each hazard. If Injury to the Insured Person results, within 365 days of the date of the accident that caused the Injury, in any one of the Losses specified below, the Company will pay the percentage of the Principal Sum shown below for that Loss:

For Loss of                                                                 Percentage of Principal Sum

Both Hands or Both Feet ............................................................................100%
Sight of Both Eyes .....................................................................................100%
One Hand and One Foot .............................................................................100%
One Hand and the Sight of One Eye ...........................................................100%
One Foot and the Sight of One Eye .............................................................100%
Speech and Hearing in Both Ears ...............................................................100%
One Hand or One Foot .................................................................................50%
Sight of One Eye ..........................................................................................50%
Speech or Hearing in Both Ears ..................................................................50%
Thumb and Index Finger of Same Hand ........................................................25%
Quadriplegia .............................................................................................100%
Paraplegia ...................................................................................................50%
Hemiplegia ..................................................................................................50%

"Loss" of a hand or foot means complete severance through or above the wrist or ankle joint. "Loss" of sight of an eye means total and irrecoverable loss of the entire sight in that eye. "Loss" of hearing in an ear means total and irrecoverable loss of the entire ability to hear in that ear. "Loss" of speech means total and irrecoverable loss of the entire ability to speak. "Loss" of thumb and index finger means complete severance through or above the metacarpophalangeal joint of both digits.

"Quadriplegia" means the complete and irreversible paralysis of both upper and both lower limbs. "Paraplegia" means the complete and irreversible paralysis of both lower limbs. "Hemiplegia" means the complete and irreversible paralysis of the upper and lower limbs of the same side of the body. "Limb" means entire arm or entire leg.

If more than one Loss is sustained by an Insured Person as a result of the same accident, only one amount, the largest, will be paid.

**Exposure and Disappearance.** If by reason of an accident occurring while an Insured Person's coverage is in force under this Policy, the Insured Person is unavoidably exposed to the elements and as a result of such exposure suffers a loss for which a benefit is otherwise payable under this Policy, the loss will be covered under the terms of this Policy.

If the body of an Insured Person has not been found within one year of the disappearance, forced landing, stranding, sinking or wrecking of a conveyance in which the person was an occupant while covered under this Policy, then it will be deemed, subject to all other terms and provisions of this Policy, that the Insured Person has suffered accidental death within the meaning of this Policy.

## LIMITATIONS

**Limitation on Multiple Benefits.** If an Insured Person suffers one or more losses from the same accident for which amounts are payable under more than one of the following Benefits provided by this Policy, the maximum amount payable under all of the Benefits combined will not exceed the amount payable for one of those losses, the largest: Accidental Death Benefit, Accidental Dismemberment and Paralysis Benefit.

**Aggregate Limit.** The maximum amount payable under this Policy may be reduced if more than one Insured Person suffers a loss as a result of the same accident, and if amounts are payable for those losses under one or more of the following Benefits provided by this Policy: Accidental Death Benefit, Accidental Dismemberment and Paralysis Benefit. The maximum amount payable for all such losses for all Insured Persons under all those Benefits combined will not exceed the amount shown as the Aggregate Limit in the Declarations section of this Policy. If the combined maximum amount otherwise payable for all Insured Persons must be reduced to comply with this provision, the reduction will be taken by applying the same percentage of reduction to the individual maximum amount otherwise payable for each Insured Person for all such losses under all those Benefits combined. NOTE: If the Declarations section of this Policy states that an Aggregate Limit is restricted in its applicability to certain eligible classes or certain Hazards, this Aggregate Limit provision applies only to Insured Persons in those eligible classes or to whom that Hazard applies.

## GENERAL EXCLUSIONS

This Policy does not cover any loss caused in whole or in part by, or resulting in whole or in part from, the following:

1.  suicide or any attempt at suicide or intentionally self-inflicted injury or any attempt at intentionally self-inflicted injury.

2.  travel or flight in or on (including getting in or out of, or on or off of) any vehicle used for aerial navigation, whether as a Passenger, pilot, operator or crew member, unless specifically provided by this Policy.

3.  declared or undeclared war, or any act of declared or undeclared war.

4.  full-time active duty in the armed forces of any country or international authority, except the National Guard or organized reserve corps duty (unearned premium will be returned if the Insured Person enters military service).

5.  the Insured Person being under the influence of drugs or intoxicants, unless taken under the advice of a Physician.

6.  the Insured Person's commission of or attempt to commit a felony.

## CLAIMS PROVISIONS

**Notice of Claim.** Written notice of claim must be given to the Company within 20 days after an Insured Person's loss, or as soon thereafter as reasonably possible. Notice given by or on behalf of the claimant to the Company at American International Companies®, Accident and Health Claims Division, P. O. Box 15701, Wilmington, DE 19850-5701, with information sufficient to identify the Insured Person, is deemed notice to the Company.

**Claim Forms.** The Company will send claim forms to the claimant upon receipt of a written notice of claim. If such forms are not sent within 15 days after the giving of notice, the claimant will be deemed to have met the proof of loss requirements upon submitting, within the time fixed in this Policy for filing proof of loss, written proof covering the occurrence, the character and the extent of the loss for which claim is made. The notice should include the Insured's name, the Policyholder's name and the Policy number.

**Proof of Loss.** Written proof of loss must be furnished to the Company within 90 days after the date of the loss. If the loss is one for which this Policy requires continuing eligibility for periodic benefit payments, subsequent written proofs of eligibility must be furnished at such intervals as the Company may reasonably require. Failure to furnish proof within the time required neither invalidates nor reduces any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except in the absence of legal capacity of the claimant, later than one year from the time proof is otherwise required.

**Payment of Claims.** Upon receipt of due written proof of death, payment for loss of life of an Insured Person will be made to the Insured Person's beneficiary as described in the Beneficiary Designation and Change provision of the General Provisions section.

Upon receipt of due written proof of loss, payments for all losses, except loss of life, will be made to (or on behalf of, if applicable) the Insured Person suffering the loss. If an Insured Person dies before all payments due have been made, the amount still payable will be paid to his or her beneficiary as described in the Beneficiary Designation and Change provision of the General Provisions section.

If any payee is a minor or is not competent to give a valid release for the payment, the payment will be made to the legal guardian of the payee's property. If the payee has no legal guardian for his or her property, a payment not exceeding $1,000 may be made, at the Company's option, to any relative by blood or connection by marriage of the payee, who, in the Company's opinion, has assumed the custody and support of the minor or responsibility for the incompetent person's affairs.

Any payment the Company makes in good faith fully discharges the Company's liability to the extent of the payment made.

**Time of Payment of Claims.** Benefits payable under this Policy for any loss other than loss for which this Policy provides any periodic payment will be paid immediately upon the Company's receipt of due written proof of the loss. Subject to the Company's receipt of due written proof of loss, all accrued benefits for loss for which this Policy provides periodic payment will be paid at the expiration of each month during the continuance of the period for which the Company is liable and any balance remaining unpaid upon termination of liability will be paid immediately upon receipt of such proof.

## GENERAL PROVISIONS

**Entire Contract; Changes.** This Policy, and any application or attached papers make up the entire contract between the Policyholder and the Company. In the absence of fraud, all statements made by the Policyholder will be considered representations and not warranties.

No change in this Policy will be valid until approved by an officer of the Company. The approval must be noted on or attached to this Policy. No agent may change this Policy or waive any of its provisions.

**Incontestability.** The validity of this Policy will not be contested after it has been in force for two year(s) from the Policy Effective Date, except as to nonpayment of premiums.

**Certificates of Insurance.** The Company, when required, will provide certificates of insurance for distribution to each Insured describing the coverage provided, any limitations, reductions, and exclusions applicable to the coverage, and to whom benefits will be paid.

**Beneficiary Designation and Change.** The Insured's designated beneficiary(ies) is (are) the person(s) so named by the Insured for the Policyholder's group life insurance policy as shown on the Policyholder's records kept on that policy, unless the Insured has named a beneficiary specifically for this Policy as shown on the Policyholder's records kept on this Policy.

An Insured over the age of majority and legally competent may change his or her beneficiary designation at any time, unless an irrevocable designation has been made, without the consent of the designated beneficiary(ies), by providing the Policyholder with a written request for change. When the request is received by the Policyholder, whether the Insured is then living or not, the change of beneficiary will relate back to and take effect as of the date of execution of the written request, but without prejudice to the Company on account of any payment made by it prior to receipt of the request.

If there is no designated beneficiary for an Insured's coverage or no designated beneficiary for the Insured's coverage is living after the Insured's death, the benefits will be paid, in equal shares, to the survivors in the first surviving class of those that follow: the Insured's (1) spouse; (2) children; (3) parents; or (4) brothers and sisters. If no class has a survivor, the beneficiary is the Insured's estate.

**Physical Examination.** The Company at its own expense has the right and opportunity to examine the person of any individual whose loss is the basis of claim under this Policy when and as often as it may reasonably require during the pendency of the claim.

**Legal Actions.** No action at law or in equity may be brought to recover on this Policy prior to the expiration of 60 days after written proof of loss has been furnished in accordance with the requirements of this Policy. No such action may be brought after the expiration of three years after the time written proof of loss is required to be furnished.

**Noncompliance with Policy Requirements.** Any express waiver by the Company of any requirements of this Policy will not constitute a continuing waiver of such requirements. Any failure by the Company to insist upon compliance with any Policy provision will not operate as a waiver or amendment of that provision.

**Conformity With State Statutes.** Any provision of this Policy which, on its effective date, is in conflict with the statutes of the state in which this Policy is delivered is hereby amended to conform to the minimum requirements of those statutes.

**Workers' Compensation.** This Policy is not in lieu of and does not affect any requirements for coverage by any Workers' Compensation Act or similar law

**Clerical Error.** Clerical error, whether by the Policyholder or the Company, will not void the insurance of any Insured Person if that insurance would otherwise have been in effect nor extend the insurance of any Insured Person if that insurance would otherwise have ended or been reduced as provided in this Policy.

**Records.** The Company has the right to inspect at any reasonable time, any records of the Policyholder that may have a bearing on this insurance.

**Assignment.** This Policy is non-assignable. An Insured may assign all of his or her rights, privileges and benefits under this Policy without the consent of his or her designated beneficiary. The Company is not bound by an assignment until the Company receives and files a signed copy. The Company is not responsible for the validity of assignments. The assignee only takes such rights as the assignor possessed and such rights are subject to state and federal laws and the terms of this Policy.

**New Entrants.** This Policy will allow from time to time, that new eligible Insured Persons of the Policyholder be added to the class(es) of Insured Persons originally insured under this Policy.

 **AIG LIFE INSURANCE COMPANY**
600 KING STREET
WILMINGTON, DELAWARE 19801
(302) 594-2000
(Herein called the Company)

Policyholder: Fiber Core, Inc.
Policy Number: GTP 0008062491

## ENDORSEMENT E-5
### INJURY DEFINITION AND GENERAL EXCLUSIONS AMENDATORY ENDORSEMENT

This Endorsement is attached to and made part of this Policy effective March 1, 2002. It applies only with respect to accidents that occur on or after that date. It is subject to all of the provisions, limitations and exclusions of this Policy except as they are specifically modified by this Endorsement.

1.    The definition of Injury in the Definitions section of this Policy is deleted and replaced by the following:

   **Injury** – means bodily injury: (1) which is sustained as a direct result of an unintended, unanticipated accident that occurs while the injured person's coverage under this Policy is in force; (2) which occurs under the circumstances described in a Hazard applicable to that person; and (3) which directly (independent of sickness, disease, mental incapacity, bodily infirmity or any other cause) causes a covered loss under a Benefit applicable to such Hazard.

2.    The General Exclusions section of the Policy is deleted and replaced by the following:

### General Exclusions

No coverage shall be provided under this Policy and no payment shall be made for any loss resulting in whole or in part from, or contributed to by, or as a natural and probable consequence of any of the following excluded risks even if the proximate or precipitating cause of the loss is an accidental bodily Injury:

1.    suicide or any attempt at suicide  or intentionally self-inflicted Injury or any attempt at intentionally self-inflicted Injury or auto-eroticism.

2.    travel or flight in or on (including getting in or out of, or on or off of) any vehicle used for aerial navigation, whether as a Passenger, pilot, operator or crew member, unless specifically provided by this Policy.

3.    declared or undeclared war, or any act of declared or undeclared war.

4.    sickness, disease, mental incapacity or bodily infirmity whether the loss results directly or indirectly from any of these.

5.    infections of any kind regardless of how contracted, except bacterial infections that are directly  ·
      caused by botulism, ptomaine poisoning or an accidental cut or wound independent and in the
      absence of any underlying sickness, disease or condition including but not limited to diabetes.

6.   full-time active duty in the armed forces of any country or international authority, except the National Guard or organized reserve corps duty (unearned premium will be returned if the Insured Person enters military service).

7.   the Insured Person being under the influence of intoxicants while operating any vehicle or means of transportation or conveyance.

8.   the Insured Person being under the influence of drugs unless taken under the advice of and as specified by a Physician.

9.   the Insured Person's commission of or attempt to commit a felony.

10.  the medical or surgical treatment of sickness, disease, mental incapacity or bodily infirmity whether the loss results directly or indirectly from the treatment.

11.  stroke or cerebrovascular accident or event; cardiovascular accident or event; myocardial infarction or heart attack; coronary thrombosis; aneurysm.

The President and Secretary of AIG Life Insurance Company witness this Endorsement:

President                                   Secretary



**AIG LIFE INSURANCE COMPANY**
600 KING STREET
WILMINGTON, DELAWARE 19801
(302) 594-2000
(Herein called the Company)

Policyholder: Fiber Core, Inc.
Policy Number: GTP 0008062491

### BENEFIT B-9
### CONVERSION PRIVILEGE RIDER

This Rider is attached to and made part of the Policy effective March 1, 2002. It applies only with respect to individual coverage that ends on or after that date. It is subject to all of the provisions, limitations and exclusions of the Policy except as they are specifically modified by this Rider. See the Principal Sums, Hazards and Benefits for Eligible Persons section of the Declarations section of the Policy for the applicability of this Rider with respect to each class of Insured Persons and each Hazard.

**Conversion Privilege (Applies to the Accidental Death Benefit and Accidental Dismemberment Benefit only.)** If an Insured Person's coverage ends (prior to age 79) because he or she is no longer a member of any eligible class of persons as described in the Classification of Eligible Persons section of the Declarations section of the Policy, coverage may be converted to an individual accidental death and dismemberment policy (herein called an Individual Policy).

The Company must receive a written application and payment of the required premium within 31 days after coverage ends under the Policy. No evidence of insurability is required to obtain the Individual Policy. The Individual Policy will be a type the Company regularly makes available on its effective date. The initial premium for the Individual Policy will be based on the Insured Person's attained age, risk class, and amount of insurance provided, at the time of application for the Individual Policy.

Coverage under the Individual Policy will take effect on the later of: (1) the date the application and required premium payment are received by the Company; or (2) the date that the Insured's coverage under the Policy ends. In the event that the application and required premium are not received prior to termination of coverage under the Policy, coverage is not provided from the date coverage ends under the Policy until the date coverage under the Individual Policy becomes effective. Coverage under the Individual Policy may not be less than $100,000 and may not exceed the greater of: (1) the amount for which the Insured was covered under the Policy; or (2) $500,000.

The President and Secretary of AIG Life Insurance Company witness this Rider:

*[signature]*            *Elizabeth M. Tuck*

President             Secretary



**AIG LIFE INSURANCE COMPANY**
600 KING STREET
WILMINGTON, DELAWARE 19801
(302) 594-2000
(Herein called the Company)

Policyholder: Fiber Core, Inc.
Policy Number: GTP 0008062491

## BENEFIT B-25
## REHABILITATION BENEFIT RIDER

This Rider is attached to and made part of the Policy effective March 1, 2002. It applies only with respect to accidents that occur on or after that date. It is subject to all of the provisions, limitations and exclusions of the Policy except as they are specifically modified by this Rider. See the Principal Sums, Hazards and Benefits for Eligible Persons section of the Declarations section of the Policy for the applicability of this Rider with respect to each class of Insured Persons and each Hazard.

**Rehabilitation Benefit.** If an Insured Person suffers an accidental dismemberment or paralysis for which an Accidental Dismemberment and Paralysis benefit is payable under the Policy, the Company will reimburse the Insured Person for Covered Rehabilitative Expenses that are due to the Injury causing the dismemberment or paralysis. The Covered Rehabilitative Expenses must be incurred within two years after the date of the accident causing that Injury, up to a maximum of $5,000 for all Injuries caused by the same accident.

**Hospital** - as used in this Rider, means a facility that: (1) is operated according to law for the care and treatment of injured people; (2) has organized facilities for diagnosis and surgery on its premises or in facilities available to it on a prearranged basis; (3) has 24 hour nursing service by registered nurses (R.N.); and (4) is supervised by one or more Physicians. A Hospital does not include: (1) a nursing, convalescent or geriatric unit of a hospital when a patient is confined mainly to receive nursing care; (2) a facility that is, other than incidentally, a rest home, nursing home, convalescent home or home for the aged; nor does it include any ward, room, wing, or other section of the hospital that is used for such purposes; or (3) any military or veterans hospital or soldiers home or any hospital contracted for or operated by any national government or government agency for the treatment of members or ex-members of the armed forces.

**Medically Necessary Rehabilitative Training Service** - as used in this Rider, means any medical service, medical supply, medical treatment or Hospital confinement (or part of a Hospital confinement) that: (1) is essential for physical rehabilitative training due to the Injury for which it is prescribed or performed; (2) meets generally accepted standards of medical practice; and (3) is ordered by a Physician.

**Covered Rehabilitative Expense(s)** - as used in this Rider, means an expense that: (1) is charged for a Medically Necessary Rehabilitative Training Service of the Insured Person performed under the care, supervision or order of a Physician; (2) does not exceed the usual level of charges for similar treatment, supplies or services in the locality where the expense is incurred (for a Hospital room and board charge, does not exceed the most common charge for Hospital semi-private room and board in the Hospital where the expense is incurred); and (3) does not include charges that would not have been made if no insurance existed.



**AIG LIFE INSURANCE COMPANY**
600 KING STREET
WILMINGTON, DELAWARE 19801
(302) 594-2000
(Herein called the Company)

Policyholder: Fiber Core, Inc.
Policy Number: GTP 0008062491

## BENEFIT B-28
## SEAT BELT AND AIR BAG (PERCENTAGE OF PRINCIPAL SUM AMOUNT) BENEFIT RIDER

This Rider is attached to and made part of the Policy effective March 1, 2002. It applies only with respect to accidents that occur on or after that date. It is subject to all of the provisions, limitations and exclusions of the Policy except as they are specifically modified by this Rider. See the Principal Sums, Hazards and Benefits for Eligible Persons section of the Declarations section of the Policy for the applicability of this Rider with respect to each class of Insured Persons and each Hazard.

**Seat Belt Benefit.** The Company will pay a benefit under this Rider when the Insured Person suffers accidental death such that an Accidental Death benefit is payable under the Policy and the accident causing death occurs while the Insured Person is operating, or riding as a passenger in, an Automobile and wearing a properly fastened, original, factory-installed seat belt. The amount payable under this Rider is the lesser of: (1) $10,000; or (2) 10% of the Insured Person's Principal Sum.

**Air Bag Benefit.** The Company will pay an additional benefit under this Rider if a Seat Belt Benefit is payable under this Rider and if the Insured Person is positioned in a seat protected by a properly functioning, original, factory-installed Supplemental Restraint System that inflates on impact. The additional amount payable under this Rider is the lesser of: (1) $5,000; or (2) 5% of the Insured Person's Principal Sum.

Verification of the actual use of the seat belt, at the time of the accident, and that the Supplemental Restraint System inflated properly upon impact must be a part of an official report of the accident or be certified, in writing, by the investigating officer(s).

**Automobile** - as used in this Rider, means a self-propelled private passenger motor vehicle with four or more wheels which is of a type both designed and required to be licensed for use on the highways of any state or country. Automobile includes, but is not limited to, a sedan, station wagon, or jeep-type vehicle and a motor vehicle of the pickup, panel, van, camper or motor home type. Automobile does not include a mobile home or any motor vehicle which is used in mass or public transit.

**Supplemental Restraint System** - as used in this Rider, means an air bag which inflates for added protection to the head and chest areas.

The President and Secretary of AIG Life Insurance Company witness this Rider:

*H.R. Wyllf*                    *Elizabeth M. Tuck*

President                              Secretary



**AIG LIFE INSURANCE COMPANY**
600 KING STREET
WILMINGTON, DELAWARE 19801
(302) 594-2000
(Herein called the Company)

Policyholder: Fiber Core, Inc.
Policy Number: GTP 0008062491

## HAZARD H-20
### 24-HOUR ACCIDENT PROTECTION

Hazard H-20 applies only with respect to an Insured Person in a class to which this Hazard applies as stated in the Principal Sums, Hazards and Benefits for Eligible Persons section of the Declarations section of this Policy, with respect to Injury sustained by such person anywhere in the world.

With respect to any period of time such Insured Person is traveling on a conveyance, Hazard H-20 applies only with respect to Injury sustained by the person:

1.    while riding as a Passenger in or on (including getting in or out of, or on or off of):

    a.    any Civilian Aircraft; or

    b.    any Military Air Transport Aircraft; or

2.    while operating or riding in or on (including getting in or out of, or on or off of), or by being struck or run down by any conveyance being used as a means of land or water transportation; or

3.    by being struck or run down by any aircraft.

**Exclusions.** Exclusion 2 in the General Exclusions section of this Policy is waived with respect to an Insured Person to whom this Hazard applies, but only with respect to Injury sustained by such person under the circumstances described in this Hazard. It is not waived with respect to such person traveling or flying in or on (including getting in or out of, or on or off of) any aircraft other than as expressly described in this Hazard, unless otherwise provided by this Policy.

In addition to all other exclusions in the General Exclusions section of this Policy, the circumstances described in this Hazard are deemed to exclude travel or flight in or on (including getting in or out of, or on or off of) any Policyholder Aircraft, unless otherwise provided by this Policy, and any aircraft while it is being used for any Specialized Aviation Activity(ies).

**Exclusions.** In addition to the Exclusions in the General Exclusions section of the Policy, Covered Rehabilitative Expenses do not include any expenses for or resulting from any condition for which the Insured Person is entitled to benefits under any Workers' Compensation Act or similar law.

The President and Secretary of AIG Life Insurance Company witness this Rider:

President                              Secretary

| CIVIL ACTION COVER SHEET | DOCKET NO.(S) 05-0491C | Trial Court of Massachusetts Superior Court Department County: Worcester |
|---|---|---|

| PLAINTIFF(S) Hafiza Aslami | DEFENDANT(S) AIG Life Insurance Co., AIG Claim Services, Inc., Lori Rodek and Gerald Wyndorf |
|---|---|

ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE Stephen Gordon
Stephen Gordon & Associates, 500 Main St.
Suite 535, Worcester, MA 01608
Board of Bar Overseers number: #203620   (508) 755-1050

ATTORNEY (if known)

## Origin code and track designation

Place an x in one box only:
- [X] 1. F01 Original Complaint
- [ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
- [ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)

- [ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
- [ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
- [ ] 6. E10 Summary Process Appeal (X)

## TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| B99 93A | Unjust Enrichment | ( F ) | ( X ) Yes      (  ) No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses .................................................$............
2. Total Doctor expenses ...................................................$............
3. Total chiropractic expenses .............................................$............
4. Total physical therapy expenses ........................................$............
5. Total other expenses (describe) .........................................$............
Subtotal $............
B. Documented lost wages and compensation to date ........................$............
C. Documented property damages to date ....................................$............
D. Reasonably anticipated future medical and hospital expenses .............$............
E. Reasonably anticipated lost wages .......................................$............
F. Other documented items of damages (describe)
$............
G. Brief description of plaintiff's injury, including nature and extent of injury (describe)
**Plaintiff is the widow of Fraidoon Aslami who was an insured under a blanket group life insurance policy issued to his employer. Defendant failed, neglected or refused to settle plaintiff's claim for over eighteen months, depriving her of the use of the money.**
$............
TOTAL $ 49,970....
Unpaid Interest

### CONTRACT CLAIMS
(Attach additional sheets as necessary)
Provide a detailed description of claim(s):

**N/A**

TOTAL $. ............

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT      **None**

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____   DATE: 3-12-05

AOTC-6 mtc005-11/99
A.O.S.C. 1-2000

mm 3/17/05

Exhibit 1)

AiG Life Insurance Company
A& ' Claims Department
P. O. Box 15701
Wilmington, DE 19850-5701
800-551-0824/302-761-3700

| NAME OF GROUP: | FIBER CORE |
| POLICY NUMBER: | GTP 8062491 |

---

## GROUP POLICYHOLDER/EMPLOYER INSTRUCTIONS

In order to assure prompt processing of this claim, please forward the claim form to the Beneficiary. The Employer/Administrator must complete PART A in its entirety. Due to recent changes in tax laws, the Beneficiary will be required to complete PART B. Be certain that PART C on the reverse side is completed in full and signed by the Beneficiary.

Return this form to the above address.

In addition to the claim form, the following items are required:
(1) A Certified Copy of the final death certificate;
(2) Your company's enrollment benefits form and Beneficiary Designation;
(3) Confirmation of employee's Principal Sum and current premium payment;
(4) The Police Report, any Autopsy Report, and any newspaper clippings.
(5) If Business Travel, a copy of employee's itinerary prior to the accident, purpose of trip, destination to and from trip, and confirmation that trip was authorized by the company.

Every question must be fully answered. We reserve the right to require or to obtain further information should it be deemed necessary. If there is more than one beneficiary, all may join in one statement, or a separate form will be furnished for each if desired.

## PART A:  GROUP POLICYHOLDER/EMPLOYER INFORMATION

GROUP POLICYHOLDER/EMPLOYER ADDRESS

FiberCore Inc. Po Box 180, 253 Worcester Road, Charlton, MA 01507

| DIVISION NAME AND ADDRESS | | | | | ACCIDENTAL DEATH BENEFIT IN FORCE |
|---|---|---|---|---|---|
| Same | | | | | $ 262,500.00 |

| EMPLOYEE'S NAME AND ADDRESS | | | DATE EMPLOYED | | DATE OF BIRTH |
|---|---|---|---|---|---|
| Fraidon Aslami | | | 09/11/95 | | 01/01/56 |
| EFFECTIVE DATE OF COVERAGE | SOCIAL SECURITY NUMBER | | DATE OF DEATH | | OCCUPATION |
| 03/01/02 | 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 | | 07/26/02 | | Process Engineer |
| TERMINATION DATE OF COVERAGE | INSURANCE CLASS | | SALARY ON DATE LAST WORKED (HRLY/WKLY/MTHLY/ANNLY) | | DATE PREMIUM PAID TO |
| None | | | $52,500/ANNLY | | Current |

| DATE LAST WORKED | STATUS ON DATE LAST WORKED: | | | | | |
|---|---|---|---|---|---|---|
| 06/21/02 | ☒ ACTIVE ☐ RETIRED ☐ | PREMIUM WAIVER FOR DISABILITY ☐ | APPROVED LEAVE OF ABSENCE (EXPLAIN) ☐ | OTHER |

| EMPLOYEE WAS: | ☐ HOURLY | ☒ SALARIED | ☐ COMMISSIONED | ☐ OTHER (EXPLAIN) |
|---|---|---|---|---|

### If Claim is For Dependent, Provide the Following:

| DEPENDENT'S NAME AND ADDRESS | SOCIAL SECURITY NUMBER | RELATIONSHIP | AMOUNT OF BENEFIT |
|---|---|---|---|
| | | | |

| DEPENDENT'S OCCUPATION | DEPENDENT'S DATE OF BIRTH | NAME AND ADDRESS OF EMPLOYER |
|---|---|---|
| | | |

### GROUP POLICYHOLDER/EMPLOYER SIGNATURE

I HEREBY CERTIFY THAT THE ABOVE INFORMATION IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

| DATE SIGNED | PLACE (CITY, STATE) | | PHONE NUMBER |
|---|---|---|---|
| 12/18/02 | Charlton, MA 01507 | | 508-248-3500 |
| GROUP POLICYHOLDER/EMPLOYER | BY (THEIR AUTHORIZED REPRESENTATIVE) | | |
| FiberCore, Inc | Cassandra De Luca | | |

## PART B:  IMPORTANT TAX INFORMATION

| To Be Completed by Beneficiary Social Security Number/ Tax ID Number | 0 1 2 1 1 6 1 6 4 0 1 7 1 9 | Hafiza A. Aslami Please Print or Type Name of Beneficiary |
|---|---|---|

Under penalties of perjury, I certify: (1) that the Social Security/Tax ID Number shown above is my correct Social Security or Taxpayer Identification Number.

Be Certain Part C on the Reverse Side is Completed

PART C: BENEFICIARY INFORMATION

… to assure prompt processing, please be certain the authorization below is signed by the beneficiary. The completed and signed claim form along with Certified Death Certificate, Police Report, Autopsy Report, and any newspaper clippings should be returned to the Employer/Administrator.

| …E OF BENEFICIARY | RELATIONSHIP TO DECEDENT | BENEFICIARY'S DATE OF BIRTH |
|---|---|---|
| Hafiza A. Aslami | Spouse | 11/29/59 |

…TE: If any designated beneficiary is deceased, submit that beneficiary's certified Death Certificate. If the beneficiary is the Deceased's estate, furnish …tified letters of Administration or Letters of Testamentary, and Estate Tax ID Number. If the beneficiary is a minor, furnish certified Letters of Guardianship the minor's estate and minor's social security number.

| …EN DID ACCIDENT HAPPEN? (MONTH, DAY, YEAR) | TIME ☐ A.M. ☒ P.M. | WHERE DID ACCIDENT HAPPEN? (IF CITY OR TOWN, SHOW STREET NUMBER) |
|---|---|---|
| July 26, 2002 | 4:30 | Parwan, Afghanistan |

…AT WAS CAUSE OF DEATH?
piration pneumonia and
hypoxia

DATE OF DEATH (MO., DAY, YEAR) ATTACH COPY OF DEATH CERTIFICATE.
July 26, 2002

…EN DID SYMPTOMS OF CAUSE OF DEATH FIRST APPEAR?
immediately

…W DID ACCIDENT HAPPEN? (DESCRIBE FULLY)
Decedent was swimming in a river. He was pulled under by the current and drowned.

…ST ALL PHYSICIANS AND SURGEONS WHO ATTENDED DECEASED FOR THE INJURIES CAUSING DEATH.

| …AME & ADDRESS | NAME & ADDRESS | NAME & ADDRESS |
|---|---|---|
| …r. M. Salim Jallal …lbahar Hospital, Parwan Afghanistan | | |

…IST ALL PHYSICIANS AND SURGEONS WHO ATTENDED DECEASED DURING THE LAST FIVE YEARS (STATE AILMENTS INVOLVED).

| …AME | ADDRESS | AILMENT |
|---|---|---|
| …r. Ursula Ziehl | Johannisstr. 18 09443 Jena Germany | Primary physician |
| …AME | ADDRESS | AILMENT |
| | | |

| LIST ALL WITNESSES TO ACCIDENT. | | |
|---|---|---|
| NAME & ADDRESS | NAME & ADDRESS | NAME & ADDRESS |
| | | |

LIST OTHER COVERAGES AND AMOUNTS OF INSURANCE IN FORCE ON DECEASED'S LIFE.

| NAME OF COMPANY | POLICY NUMBER | EFFECTIVE DATE | AMOUNT OF INSURANCE |
|---|---|---|---|
| Reliance Standard | GL 131538 | 01/28/02 | $52,500.00 (life) |
| NAME OF COMPANY | POLICY NUMBER | EFFECTIVE DATE | AMOUNT OF INSURANCE |
| Reliance Standard | GL 131538 | 01/28/02 | $52,500.00 (Accidental Death) |

HAVE DIVORCE PROCEEDINGS EVER BEEN INSTITUTED BY OR AGAINST THE DECEASED? IF YES, INDICATE WHEN, WHERE AND THE OUTCOME.
No

HEREBY CERTIFY THAT THE ABOVE INFORMATION IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF

## AUTHORIZATION

I, the undersigned authorize any hospital or other medical-care institution, physician or other medical professional, pharmacy, insurance support organization, governmental agency, group policyholder, insurance company, association, employer or benefit plan administrator to furnish to the Insurance Company named above or its representatives, any and all information with respect to any injury or sickness suffered by, the medical history of, or any consultation, prescription or treatment provided to, the person whose death, injury, sickness or loss is the basis of claim and copies of all of that person's hospital or medical records, including information relating tomental illness and use of drugs and alcohol, to determine eligibility for benefit payments under the Policy Number identified above. I authorize the group policyholder, employer or benefit plan administrator to provide the Insurance Company named above with financial and employment-related information. I understand that this authorization is valid for the term of coverage of the Policy identified above and that a copy of this authorization shall be considered as valid as the original. I understand that I or my authorized representative may request a copy of this authorization.

For claimants not residing in California, New York, or Pennsylvania: Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

| SIGNATURE OF BENEFICIARY, AUTHORIZED REPRESENTATIVE, OR NEXT OF KIN | DATE SIGNED (MONTH, DAY, YEAR) | |
|---|---|---|
| Hafiza A. Pc… | 12/4/02 | |
| ADDRESS OF NEXT OF KIN (NO., STREET, CITY, STATE) | BUSINESS PHONE NUMBER | HOME PHONE NUMBER |
| 137 Orchard Hill Dr, Oxford, MA 01540 | ( ) | (774) 230-1501 |

Exhibit E



AIG Claim Services, Inc.®
**A&H Claims Department**
P. O. Box 15701
Wilmington, DE 19850-5701
800.551.0824

On behalf of:
*AIG Life Insurance Company*

January 3, 2003

Mrs. Hafiza A. Aslami
137 Orchard Hill Drive
Oxford, MA 01540

RE:              **Fraidoon Aslami**
Policy Number:   **GTP 8062491**
Policyholder:    **Fiber Core**

Dear Mrs. Aslami:

This letter acknowledges receipt of the above captioned claim for accidental death benefits. Please accept our sincere condolences on the loss of your husband.

This information submitted will be reviewed in an expedient manner to finalize your claim for benefits. We will continue to keep you informed of the status and expect to convey a decision to you in the near future.

In the interim, if you have any questions please call our office at the above telephone number and my extension is 3733.

AIG Life Insurance Company reserves all rights and defenses concerning your claim for plan benefits. Nothing in this letter or any other communication that you have received or will receive from us should be interpreted as waiving or prejudicing any of the rights and defenses of ourselves or the plan, which we specifically reserve.

Sincerely,

Lori D. Rodek
AD&D Claims Examiner

cc:    Fiber Core

A Member Company of
American International Group, Inc



**AIG Claim Services, Inc.®**
*A&H Claims Department*
P. O. Box 15701
Wilmington, DE 19850-5701
800.551.0824

On behalf of:
*AIG Life Insurance
Company*

July 6, 2004

Stephen Gordon & Associates
500 Main Street, Suite 535
Worchester, MA 01608

RE:                          Fraidoon Aslami
Policy Number:          GTP 8062491
Policyholder:             Fiber Core
Claim Number:           I-044735-01

Dear Mr. Gordon:

Enclosed is a check made payable to your client, Mrs. Hafiza Aslami in the amount of
$263,000.00. This payment represents the Accidental Death Benefit under the above
referenced policy. Again, we would like to extend our deepest condolences to Mrs. Aslami
and her family for the loss of her husband.

Should you have any questions, please don't hesitate to contact our office at 1(800) 551-
0824. My extension is 8923.

Sincerely,

Lori Rodek
AD&D Claims Examiner

Cc: Fiber Core

A Member Company of
American International Group, Inc



**STEPHEN GORDON & ASSOCIATES**
**500 MAIN STREET, SUITE 535**
**WORCESTER, MA 01608**
**TELEPHONE**
**(508) 755-1050 - (508) 754-5000**

March 15, 2004

President
AIG Claim Services, Inc.
PO Box 15701
Wilmington, DE 19850

Lori Rodek, AD&D Claims Examiner
AIG Claim Services, Inc.
A&H Claims Department
PO Box 15701
Wilmington, DE 19850

RE:   Fiber Core Death Policy
        Insured:     Fraidoon Aslami
        Policy No.:  GTP 8062491
        Claim No.:  1-044735-01

Dear Sir/Madam and Ms. Rodek:

My office has been retained by Mrs. Aslami, Fraidoon Aslami's wife, in
relation to your failure or refusal to pay the benefit under the Fiber Core
policy #GTP 8062491. Mrs. Aslami has caused to be forwarded to you a
number of documents regarding her husband's death, including an
Admission Observation Sheet from the local hospital in Afghanistan and a
Certified Report of Death of Fraidoon Aslami from the U.S. Statement
Department, certified by the Secretary of State, Colin Powell.

The facts contained in the records are undisputed. Mr. Aslami was
swimming in a pool when he went under. He was removed from the pool
and taken to the local hospital. The records indicate that an attempt was

made to resuscitate him but it was unsuccessful. The State Department reported the death of an American Citizen abroad, a copy of which you have been provided. That Certified Death Certificate establishes that on July 26, 2002 Mr. Aslami died at the Gulbahar Hospital, Parwan, Afghanistan from the effects of drowning according to the attending physician, Dr. Jallal. I am enclosing another copy of the State Department Certificate for your review.

Mrs. Aslami has made repeated requests for payment of the benefit which is $250,000.00 which you have refused, without basis, to pay. It is now 1 3/4 years since Mr. Aslami's death and you have not made good on the policy.

The policy provides for "accidental death" and includes only six exclusions, thereby compensating for all other accidental causes of death. Mr. Aslami did not die of any of the exclusions listed in your policy under B-2 or Endorsement E-5. In fact, Mr. Aslami's death falls specifically within your definition of injury in your policy in Endorsement E-5, wherein injury is defined. Mr. Aslami's death falls specifically within your definition of injury and does not fall within any of the exclusions. Therefore, there is no justifiable reason for your company to withhold payment, especially for almost two years.

Demand is hereby made upon you pursuant to Massachusetts Statute G.L. 93A, known as the Consumer Protection Act. Your refusal to pay Mrs. Aslami the policy value upon presentation to you of clear evidence that Mr. Aslami died accidentally from drowning is a deceptive act or practice and is barred by the cases, statutes and regulations of the Attorney General's Office of the Commonwealth of Massachusetts. Among other things, your company has an obligation to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear. Under these circumstances, there is no dispute that your obligation to pay has become reasonably clear. To date, you have not provided any valid reason in writing to support this 1 3/4 years delay in paying Mrs. Aslami. You have also failed to provide a prompt reasonable explanation of the basis for the denial of the claim.

Demand is hereby made upon you pursuant to G.L. 93A for the forthwith payment of the face value of the policy to Mrs. Aslami which is $250,000.00. Please be advised that you have thirty (30) days from your

receipt of this letter to make a reasonable tender of settlement in relation to all of the surrounding circumstances. Should you fail, neglect or refuse to do so, it is Mrs. Aslami's intention to commence litigation against you wherein you may become liable for not less than double nor more than treble her actual damages plus attorney's fees and costs. You should also be aware that under certain circumstances, an individual employee of a corporation can also be held severally liable for multiple damages pursuant to G.L. 93A. Furthermore, your conduct violates G.L. 176D, §3 pursuant to which demand is also made for payment. Please be advised that Mrs. Aslami retains the right to pursue the appropriate parties pursuant to both G.L. 93A and a separate claim pursuant to G.L. 176D.

Proceed at your peril.

Very truly yours,

Stephen Gordon, Esq.
SG/jab



**UNITED STATES POSTAL SERVICE**

| Track/Confirm - Intranet Item Inquiry - Domestic |
|---|

| Item: 7001 0320 0001 4879 9070 | | Date/Time Mailed: 03/15/2004 16:25 | |
|---|---|---|---|
| Destination | ZIP Code: 19850 | City: WILMINGTON | State: DE |
| Origin | ZIP Code: 01608 | City: WORCESTER | State: MA |

Class: First Class

Scheduled Delivery: 03/17/2004

Weight: lb: 0 oz: 1

| Special Services | Associated Labels | Amount |
|---|---|---|
| CERTIFIED MAIL | 7001 0320 0001 4879 9070 | $2.30 |
| RETURN RECEIPT | | $1.75 |

| Event | Date | Time | Location | Scanner ID |
|---|---|---|---|---|
| DELIVERED | 03/19/2004 | 08:07 | WILMINGTON DE 19886 | K028593 |
| | Firm Name: AIG 15701 | | | |
| | Recipient : 'S HUTTON' | | | |
| | Request Delivery Record | | | |
| | View Delivery Signature and Address | | | |
| ARRIVAL AT UNIT | 03/18/2004 | 06:12 | WILMINGTON DE 19850 | J732589 |
| ACCEPT OR PICKUP | 03/15/2004 | 16:25 | WORCESTER MA 01608 | |



Enter Request Type and Item Number:

Quick Search ⦿    Extensive Search ◌

Explanation of Quick and Extensive Searches

Item Number:

Submit

Inquire on multiple items.

Go to the Product Tracking System Home Page.



## Track/Confirm - Intranet Item Inquiry - Domestic

| Item: 7001 0320 0001 4879 9087 | | Date/Time Mailed: 03/15/2004 16:26 | |
|---|---|---|---|
| Destination | ZIP Code: 19850 | City: WILMINGTON | State: DE |
| Origin | ZIP Code: 01608 | City: WORCESTER | State: MA |

Class: First Class
Scheduled Delivery: 03/17/2004
Weight: lb: 0 oz: 1

| Special Services | Associated Labels | Amount |
|---|---|---|
| CERTIFIED MAIL | 7001 0320 0001 4879 9087 | $2.30 |
| RETURN RECEIPT | | $1.75 |

| Event | Date | Time | Location | Scanner ID |
|---|---|---|---|---|
| DELIVERED | 03/17/2004 | 08:31 | WILMINGTON DE 19850 | J722385 |
| | Firm Name: AIG 15701 | | | |
| | Recipient : 'S HUTTON' | | | |
| | Request Delivery Record | | | |
| | View Delivery Signature and Address | | | |
| ARRIVAL AT UNIT | 03/17/2004 | 06:57 | WILMINGTON DE 19850 | K148334 |
| ACCEPT OR PICKUP | 03/15/2004 | 16:26 | WORCESTER MA 01608 | |



Enter Request Type and Item Number:

Quick Search ◉    Extensive Search ○

Explanation of Quick and Extensive Searches

Item Number:

Submit

Inquire on multiple items.

Go to the Product Tracking System Home Page.

Exhibit H



**AIG Claim Services, Inc.®**
*A&H Claims Department*
P. O. Box 15701
Wilmington, DE 19850-5701
800.551.0824

On behalf of:
*AIG Life Insurance*
*Company*

March 19, 2004

Stephen Gordon & Associates
500 Main Street, Suite 535
Worcester, MA 01608

| RE: | Fraidoon Aslami |
| Policyholder: | Fiber Core |
| Policy Number: | GTP 8062491 |
| Claim Number: | I-044735-01 |

Dear Mr. Gordon:

This letter acknowledges receipt of your letter of representation regarding the accidental death benefits under the above referenced policy.

The information received to date indicates that on July 26, 2002, Mr. Aslami, his wife and children were on an outing with family and friends at the Gul Bhar River in Kabul, Afghanistan. According to Mrs. Aslami's statement, it is custom in Afghanistan that the women and children sit in one place and the men another. One of the men came from where they were sitting and told her that her husband had gone under water and was taken to Gul Bhar Hospital. By the time she arrived at the hospital, her husband was already dead.

According to a statement from Dr. Jallal, relatives brought Mr. Aslami to the hospital and told Dr. Jallal that Mr. Aslami had drowned. The doctor game him first aid treatment, but was not successful and pronounced him dead. The hospital had no medical record of the Insured; however his name was written in the register. Apparently there is no police or accident report available.

According to the Report of Death of an American Citizen Abroad, we have been able to confirm that there is no District 22 or District 11 in the area called Khair Khana, Gula-e-Park. We could not locate or confirm the residential address in Kabul as it is incomplete

A Member Company of
American International Group, Inc.

Stephen Gordon
March 19, 2004
Page 2

Please be advised that the Policy provides coverage for certain losses under specific
circumstances. Relevant to the claim, the Policy provides the following:

*Accidental Death Benefit- If Injury to the Insured Person results in death within 365 days
of the date of the accident that caused the Injury, the Company will pay 100% of the
Principal Sum.*

*Injury- means a bodily injury: (1) which is sustained as a direct result of an unintended,
unanticipated accident that occurs while the injured person's coverage under this Policy is
in force; (2) which occurs under the circumstances described in a Hazard applicable to
that person; and (3) which directly (independent of sickness, disease, mental incapacity,
bodily infirmity or any other cause) causes a covered loss under a Benefit applicable to
such Hazard.*

We've requested an international investigator to confirm that Mr. Aslami's bodily injury
was the direct result of an unintended, unanticipated accident which was independent of
sickness, disease, mental incapacity, bodily infirmity or any other cause as described in the
policy.

Upon receipt of the investigator's report, we will continue with the consideration of the
claim. In the interim, should you have any questions, please don't hesitate to contact me at
1(800) 551-0824 extension 8923 or (302) 661-8923. My fax number is (302) 661-8959.

We are glad to communicate with you and to receive any further information that you may
provide to aid us in determining your claim. Of course, we must respectfully request that
you understand that we reserve all of our rights and defenses under the policy and the law,
and none of our communications may be construed so as to waive any of those rights. We
appreciate your cooperation.

Sincerely,

Lori Rodek
AD&D Claims Examiner

Cc: Fiber Core



**STEPHEN GORDON & ASSOCIATES**
**500 MAIN STREET, SUITE 535**
**WORCESTER, MA 01608**
**TELEPHONE**
**(508) 755-1050 - (508) 754-5000**

March 31, 2004

**Certified Mail/Return Receipt Requested**
President
AIG Life Insurance Company
600 King Street
Wilmington, DE 19801

RE:    Fiber Core Death Policy
          Insured:     Fraidoon Aslami
          Policy No.:  GTP 8062491
          Claim No.:  1-044735-01

Dear Sir/Madam:

My office has been retained by Mrs. Aslami, Fraidoon Aslami's wife, in
relation to your failure or refusal to pay the benefit under the Fiber Core
policy #GTP 8062491. Mrs. Aslami has caused to be forwarded to you a
number of documents regarding her husband's death, including an
Admission Observation Sheet from the local hospital in Afghanistan and a
Certified Report of Death of Fraidoon Aslami from the U.S. Statement
Department, certified by the Secretary of State, Colin Powell.

The facts contained in the records are undisputed. Mr. Aslami was
swimming in a pool when he went under. He was removed from the pool
and taken to the local hospital. The records indicate that an attempt was
made to resuscitate him but it was unsuccessful. The State Department
reported the death of an American Citizen abroad, a copy of which you have
been provided. That Certified Death Certificate establishes that on July 26,
2002 Mr. Aslami died at the Gulbahar Hospital, Parwan, Afghanistan from
the effects of drowning according to the attending physician, Dr. Jallal. I

am enclosing another copy of the State Department Certificate for your
review.

Mrs. Aslami has made repeated requests for payment of the benefit which is
$250,000.00 which you have refused, without basis, to pay. It is now 1 3/4
years since Mr. Aslami's death and you have not made good on the policy.

The policy provides for "accidental death" and includes only six exclusions,
thereby compensating for all other accidental causes of death. Mr. Aslami
did not die of any of the exclusions listed in your policy under B-2 or
Endorsement E-5. In fact, Mr. Aslami's death falls specifically within your
definition of injury in your policy in Endorsement E-5, wherein injury is
defined. Mr. Aslami's death falls specifically within your definition of
injury and does not fall within any of the exclusions. Therefore, there is no
justifiable reason for your company to withhold payment, especially for
almost two years.

Demand is hereby made upon you pursuant to Massachusetts Statute G.L.
93A, known as the Consumer Protection Act. Your refusal to pay Mrs.
Aslami the policy value upon presentation to you of clear evidence that Mr.
Aslami died accidentally from drowning is a deceptive act or practice and is
barred by the cases, statutes and regulations of the Attorney General's
Office of the Commonwealth of Massachusetts. Among other things, your
company has an obligation to effectuate prompt, fair and equitable
settlements of claims in which liability has become reasonably clear. Under
these circumstances, there is no dispute that your obligation to pay has
become reasonably clear. To date, you have not provided any valid reason
in writing to support this 1 3/4 years delay in paying Mrs. Aslami. You have
also failed to provide a prompt reasonable explanation of the basis for the
denial of the claim.

Demand is hereby made upon you pursuant to G.L. 93A for the forthwith
payment of the face value of the policy to Mrs. Aslami which is
$250,000.00. Please be advised that you have thirty (30) days from your
receipt of this letter to make a reasonable tender of settlement in relation to
all of the surrounding circumstances. Should you fail, neglect or refuse to
do so, it is Mrs. Aslami's intention to commence litigation against you
wherein you may become liable for not less than double nor more than
treble her actual damages plus attorney's fees and costs. You should also be

aware that under certain circumstances, an individual employee of a corporation can also be held severally liable for multiple damages pursuant to G.L. 93A. Furthermore, your conduct violates G.L. 176D, §3 pursuant to which demand is also made for payment. Please be advised that Mrs. Aslami retains the right to pursue the appropriate parties pursuant to both G.L. 93A and a separate claim pursuant to G.L. 176D.

Proceed at your peril.

Very truly yours,

Stephen Gordon, Esq.
SG/jab

| **SENDER:** *COMPLETE THIS SECTION* | *COMPLETE THIS SECTION ON DELIVERY* |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X _____ □ Agent □ Addressee<br>B. Received by ( *Printed Name* )  C. Date of Delivery<br>george M.U  4-5-04 |
| 1. Article Addressed to:<br>President<br>AIG Life INS. Co.<br>600 King St.<br>Wilmington DE<br>19801 | D. Is delivery address different from item 1? □ Yes  □ No<br>If YES, enter delivery address below:<br><br>3. Service Type<br>☒ Certified Mail  □ Express Mail<br>□ Registered  □ Return Receipt for Merchandise<br>□ Insured Mail  □ C.O.D.<br>4. Restricted Delivery? *(Extra Fee)*  □ Yes |
| 2. Article Number<br>*(Transfer from service label)*  7003 2260 0006 8472 8597 | |
| PS Form 3811, August 2001    Domestic Return Receipt    102595-02-M-1540 | |

A true copy by photostatic process
Attest:

MAS-20041213
walsh_r
Case 1:05-cv-11387-JLT   Document 4   Filed 08/01/2005   Page 42 of 43
Commonwealth of Massachusetts
WORCESTER SUPERIOR COURT
Case Summary
Civil Docket
07/28/2005
02:17 PM

# WOCV2005-00491
## Aslami v AIG Life Insurance Co et al

| File Date | 03/17/2005 | Status | Needs review for service (acneserv) |
|-----------|------------|--------|-------------------------------------|
| Status Date | 03/17/2005 | Session | C - Civil C (16 Worcester) |
| Origin | 1 | Case Type | B99 - Misc tort |
| Lead Case | | Track | F |

| Service | 06/15/2005 | Answer | 08/14/2005 | Rule12/19/20 | 08/14/2005 |
|---------|------------|--------|------------|--------------|------------|
| Rule 15 | 08/14/2005 | Discovery | 01/11/2006 | Rule 56 | 02/10/2006 |
| Final PTC | 03/12/2006 | Disposition | 05/11/2006 | Jury Trial | Yes |

### PARTIES

**Plaintiff**
Hafiza Aslami
Active 03/18/2005

**Private Counsel 203620**
Stephen J Gordon
Gordon & Associates (S J)
500 Main Street
Suite 535
Worcester, MA 01608
Phone: 508-755-1050
Fax: 508-753-6748
Active 03/18/2005 Notify

**Defendant**
AIG Life Insurance Co
Service pending 03/17/2005

**Defendant**
AIG Claim Services Inc
Service pending 03/17/2005

**Defendant**
Lori Rodek
Service pending 03/17/2005

MAS-20041213                    **Commonwealth of Massachusetts**                    07/28/2005
walsh_r                              WORCESTER SUPERIOR COURT                          02:17 PM
                                          Case Summary
                                          Civil Docket

### WOCV2005-00491
### Aslami v AIG Life Insurance Co et al

**Defendant**
Gerald Wyndorf
Service pending 03/17/2005

| ENTRIES | | |
|---------|--|--|

| Date | Paper | Text |
|------|-------|------|
| 03/17/2005 | 1.0 | Complaint & civil action cover sheet filed and rule 29 statement-CJ |
| 03/17/2005 | | Origin 1, Type B99, Track F. |
| 03/17/2005 | | Filing fee paid in the amount of $240.00 including $15.00 surcharge |
| | | and $20.00 security fee.($275.00) |

| EVENTS | | |
|--------|--|--|

A true copy by photostatic process
Attest: _____
First Asst. Clerk